UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YING WANG, WEIJUN LUO, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; <br><br> UNITED STATES DEPARTMENT OF STATE; <br><br> MARCO RUBIO, *Secretary U.S. Department of State, in his official capacity*; <br><br> BUREAU OF CONSULAR AFFAIRS; and <br><br> JOHN ARMSTRONG, *Senior Bureau Official, in his official capacity* <br><br> Defendants. | Civil Action No. 25-cv-11310-ADB |

## <u>MEMORANDUM AND ORDER</u>

BURROUGHS, D.J.

Ying Wang and Weijun Luo ("Wang" and "Luo," respectively, "Plaintiffs," taken together) bring the instant suit against the United States; the U.S. Department of State; Marco Rubio, in his official capacity as Secretary of the U.S. Department of State; the Bureau of Consular Affairs; and John Armstrong, in his official capacity as Senior Bureau Official, (collectively, "Defendants") for failure to adjudicate Luo's visa application within a reasonable time. Specifically, the Complaint asserts claims for unreasonable delay under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1) (Count I), failure to timely adjudicate Luo's visa applications under the Immigration and Nationality Act ("INA"), Aliens and Nationality, 8 U.S.C. § 1101(a)(15)(H) (Count III), and infringement of Plaintiffs' substantive and procedural

due process rights under the Fifth Amendment (Count V). [ECF No. 1 ("Complaint" or "Compl.")]. Plaintiffs seek to compel agency action pursuant to the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361 (Count II) and request declaratory judgment compelling Defendants to adjudicate Luo's visa application (Count IV). [Id.]. Presently before the Court is Defendants' motion to dismiss, [ECF No. 9], which is, for the reasons stated herein, **GRANTED** without prejudice.

## I.    BACKGROUND

Following a brief review of the applicable statutory scheme, the Court provides a summary of the relevant facts, taken from the Complaint.

### A.    Statutory Scheme

Under the Immigration and Nationality Act of 1952 ("INA"), a foreign citizen may, as a general matter, only enter the United States with either an immigrant or a nonimmigrant visa. 8 U.S.C. §§ 1181(a), 1182(a)(7). The H-1B visa is a temporary nonimmigrant visa, granted to foreign workers to perform specialty occupations. 8 U.S.C. § 1101(a)(15)(H)(i)(b); Temporary (Nonimmigrant) Workers, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/working-in-the-united-states/temporary-nonimmigrant-workers (last visited Oct. 6, 2025). As relevant here, the spouse of an H-1B visa holder may apply for H-4 status to allow him or her to accompany or follow-to-join the H-1B nonimmigrant to the United States. 8 C.F.R. § 214.2(h)(9)(iv). As part of the H-4 visa application process, the applicant must attend an in-person interview with a consular officer. 8 U.S.C. § 1202(h) ("[T]he Secretary of State shall require every alien applying for a nonimmigrant visa" to appear for an interview.); see also 8 U.S.C. § 1202(d) ("All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."). After the interview, a consular officer must "issue the visa" or "refuse the

visa." 22 C.F.R. § 41.121(a) ("When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.").[1]  Refusals of nonimmigrant visas "must be based on legal grounds, such as . . . INA 221(g)."[2]  22 C.F.R. § 41.121(a).  Agency guidance permits a consular officer who refuses a visa to obtain additional information from the applicant and place the visa application in "administrative processing."  See U.S. Dep't of State, 9 Foreign Affs. Manual ("FAM") § 306.2-2(A)(a) (2024); Rahman v. Blinken, No. 22-cv-02732, 2023 WL 196428, at *1 (D.D.C. Jan. 17, 2023) (noting that a consular officer "need only make an initial, rather than a final, determination about an applicant's visa eligibility" and that under § 221(g) they "can temporarily refuse to issue a visa in order to allow for further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility" (citing 8 U.S.C. § 1201(g))).  Put differently, refusal under § 221(g) may be overcome "when additional evidence is presented, or administrative processing is completed."  9

---

[1] An order under INA 243(d) allows the United States to sanction countries for failing to accept the return of their citizens and nationals removed from the United States.  That provision, however, is not relevant for present purposes.  22 C.F.R. § 41.121(a); see 8 U.S.C. § 1253(d).

[2] Section 221(g) of the INA, the basis of refusal seemingly at issue here, see [ECF No. 10 at 14; ECF No. 11 at 7], provides that no visa shall be issued if:

> (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]

8 U.S.C. § 1201(g); see 22 C.F.R. § 41.121(a) (refusals of nonimmigrant visas "must be based on legal grounds, such as . . . INA 221(g)").

FAM § 306.2-2(A)(a).  "A refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome."  Id. § 302.1-8(B)(c).

### B.    Factual Background

On July 1, 2024, Wang's employer filed an I-129, Petition for Nonimmigration Worker H-1 visa, which was approved and sent to the U.S. Consulate General Office (the "Consulate") in Vancouver, Canada, on July 7, 2024.  [Compl. ¶¶ 13–14].  Although not clearly stated in the Complaint, the Court assumes that after Wang's petition was approved, Luo applied for H-4 status.  See [id. ¶¶ 1, 13–17].  On August 8, 2024, Wang and Luo appeared for a visa interview at the U.S. Consulate in Vancouver.  [Id. ¶ 15].  Subsequently, on September 9, 2024, the Consulate instructed Luo to attend a second interview on September 19, and to bring additional documents.  [Id. ¶ 18].  The Consulate, however, cancelled the interview on approximately August 28, 2024, and Luo's application has since then been marked as "Refused."  See [id. ¶¶ 19–21].  Wang's H1-B visa was approved on October 4, 2024.  [Id. ¶ 17].

Luo has sent numerous email inquiries to the Consulate, which, beyond stating that his application is under administrative processing, has offered no substantive response.  [Compl. ¶¶ 22–23].  The most recent communication from the Consulate is dated March 21, 2025, noting that Luo's application remains under administrative processing.  [Id. ¶¶ 24–25].  Luo remains separated from Wang, who resides in Malden, Massachusetts, and a 10-month-old U.S. citizen child, and alleges "significant hardship" and financial loss due to the "prolonged delay" in processing his visa.  [Id. ¶¶ 27–28].

### C.    Procedural History

On May 9, 2025, Plaintiffs filed this action against the Defendants.  [Compl.].

Defendants moved to dismiss the Complaint on July 18, 2025, [ECF Nos. 9, 10], and Plaintiffs

opposed on July 24, 2025, [ECF No. 11].

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(1)

In general, when evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules

of Civil Procedure, the Court must determine whether the facts as alleged in the complaint,

"taken at face value," support subject matter jurisdiction.  Gordo-González v. United States, 873

F.3d 32, 35 (1st Cir. 2017).  When undertaking this evaluation, courts "apply the same

plausibility standard used to evaluate a motion under Rule 12(b)(6)."  Gustavsen v. Alcon

Lab'ys, Inc., 903 F.3d 1, 7 (1st Cir. 2018).  The Court must therefore "accept the factual

averments of the complaint as true, and construe those facts in the light most congenial to the

[Plaintiff's] cause."  Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987).

### B.    Rule 12(b)(6)

In a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pled

facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable

factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st

Cir. 2019) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011); Gargano v.

Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009)).  "[A] complaint must provide 'a

short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan

Mountain Sch. v. N.H. Ins., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and

set forth "factual allegations, either direct or inferential, respecting each material element

necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)).  Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

## III.    DISCUSSION

Defendants assert that Plaintiffs' Complaint should be dismissed because (i) this Court lacks jurisdiction over the Plaintiffs' APA and MVA claims, [ECF No. 10 at 4–8]; (ii) the doctrine of consular nonreviewability bars this Court's review of Luo's visa refusal, [id. at 8–10]; and (ii) the alleged delay is not unreasonable, [id. at 10–18].  Plaintiffs respond that (i) the Court has subject matter jurisdiction because Defendants have failed to take a non-discretionary duty to act upon Luo's visa application, [ECF No. 11 at 4–5]; (ii) consular nonreviewability does not apply as Plaintiffs do not challenge a final decision but rather a prolonged administrative delay in the adjudication process, [id. at 5–6]; and (iii) the Complaint adequately pleads unreasonable delay, [id. at 6-9].

### A.    Lack of Subject Matter Jurisdiction

The APA states that "each agency shall proceed to conclude a matter presented to it" "within a reasonable time," 5 U.S.C. § 555(b), and that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1).  "While the APA does not provide an independent source of subject matter jurisdiction," Conservation L. Found., Inc. v. Busey, 79

F.3d 1250, 1261 (1st Cir. 1996), the MVA vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361.  "Despite their different requirements, the APA and MVA are generally treated as coextensive for purposes of unreasonable-delay claims."  Durrani v. Bitter, No. 24-cv-11313, 2024 WL 4228927, at *2 (D. Mass. Sep. 18, 2024).  A claim under § 706(1),[3] as brought forth here, "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted).

Here, Plaintiffs contend that 8 U.S.C. § 1202(d), stating that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer," provides a nondiscretionary or mandatory duty to act.[4]  [ECF No. 11 at 4–5].  Because other sections of the INA "appear to grant near-total discretion to grant or deny visa applications," Durrani, 2024 WL 4228927, at *2 (citing 8 U.S.C. §§ 1104(a), 1201(a)), courts are split as to whether § 1202(d) creates a nondiscretionary duty, compare Oladoja v. U.S. Dep't of State, No. 24-cv-01143, 2025 WL 880010, at *5 (D.N.J. Mar. 21, 2025) ("Under the plain language of the statute, Defendants have a mandatory, nondiscretionary duty to adjudicate visa applications pursuant to Sections

---

[3] The Court notes that under Count I, Plaintiffs allege both a violation of 5 U.S.C. § 706(1) (compelling "agency action unlawfully withheld or unreasonably delayed") and § 706(2)(a) (setting aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  [Compl. ¶ 33].  Because both claims rest on the same legal theory, the Court need not consider them separately.  Rezai v. Blinken, No. 24-cv-01016, 2024 WL 4830988, at *2 (S.D. Cal. Nov. 18, 2024) ("[G]iven that Plaintiffs' Section 706(2) claim seeks to compel adjudication of their visa application, it should instead be pleaded under Section 706(1) which permits a court to 'compel agency action unlawfully withheld or unreasonably delayed.'" (quoting 5 U.S.C. § 706(1))); Daneshvar v. Blinken, No. 24-cv-00838, 2024 WL 5410448, at *3 (C.D. Cal. Nov. 21, 2024) (noting that claims under § 706(2) are best evaluated under § 706(1)).
[4] Plaintiffs incorrectly cite to 8 U.S.C. § 1202(b), which is identical to the language in § 1202(d), but applies to immigrant visa applications.

1202(b) and (d).")), Gomez v. Trump, 485 F. Supp. 3d 145, 198 n.23 (D.D.C. 2020) (same),

Shabani v. Rubio, No. 24-cv-00444, 2025 WL 1085075, at *5–6 (W.D. Va. Apr. 10, 2025)

(holding that section 1202(d), together with the implementing regulation found in 22 C.F.R.

§ 41.121(a), establishes a nondiscretionary duty for consular officers to review and adjudicate

visa applications), and Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 99–100 (D.D.C. 2024)

(same), with Mueller v. Blinken, 682 F. Supp. 3d 528, 535–36 (E.D. Va. 2023) (finding no

mandatory, nondiscretionary duty under § 1202(b),and collecting cases).  That said, courts within

the First Circuit have "typically found a 'nondiscretionary duty on consular officials to act upon

a visa or naturalization petition without unreasonable delay,'" Durrani, 2024 WL 4228927, at *2

(quoting Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 109 (D. Mass. 2024)), and this

Court, for purposes of this motion, declines to find differently and accordingly has jurisdiction

over Plaintiffs' claims that Defendants failed to perform their mandatory duty to act upon the

petition without unreasonable delay.

### B.  Consular Nonreviewability

Under the doctrine of consular nonreviewability, a court is barred from reviewing a

consular officer's final decision to deny a visa application.  Dep't of State v. Muñoz, 602 U.S.

899, 907–08 (2024).  Defendants argue that a final decision has been rendered—that is, refusing

Luo's H-4 visa and placing it in administrative processing—and, as such, Plaintiffs' claim under

APA § 706 fails.  [ECF No. 10 at 11–13].  Plaintiffs contend that Defendants have not yet issued

a final decision because Luo's petition remains in administrative processing.  [ECF No. 11 at 5].

Because Plaintiffs dispute that they have received a final decision, the question is whether the

consular nonreviewability doctrine bars unreasonable delay claims.

Courts in this Circuit differ in their approaches on this particular issue. Compare Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 152–53 (D. Mass. 2024) (because a claim of unreasonable delay does not seek judicial review of a consular decision to deny a visa, consular nonreviewability "does not preclude claims to compel [defendants] to adjudicate a visa application when [they] ha[ve] a nondiscretionary duty to do so"), and Dy v. Blinken, 703 F. Supp. 3d 314, 317 (D. Mass. 2023) (consular nonreviewability does not preclude claims seeking to compel final adjudication of a visa application), with Samandar v. Blinken, 599 F. Supp. 3d 28, 29 (D. Mass. 2022) ("[T]he doctrine of consular nonreviewability precludes review under the APA."). Here, absent guidance from the First Circuit, the Court will assume that the consular nonreviewability doctrine does not preclude judicial review of Plaintiffs' claim to compel agency action under the APA. See Conley, 731 F. Supp. 3d at 110.

**C. Unreasonable delay**

"To state a claim for unreasonable delay under the APA, a plaintiff must allege that (1) a government agency failed to take legally required action and (2) the agency's delay in taking this action was unreasonable." Conley, 731 F. Supp. 3d at 110 (first citing S. Utah Wilderness All., 542 U.S. at 62–63; and then citing Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023)).

As to the first prong, Defendants assert that in refusing and placing Luo's application in administrative processing, they "have already taken the required action on [his] visa application." [ECF No. 10 at 11]. Plaintiffs reply that a "refusal" requiring further administrative processing is part of an "ongoing process" which does not amount to a final adjudication, and, as a result, "Defendants have not discharged their duty." [ECF No. 11 at 7–8].

9

Authority from this Circuit and others support both positions. <u>Compare</u> <u>Conley</u>, 731 F. Supp. 3d at 107, 111 (refusal, even if the "agency identified a specific contingency that might warrant reconsideration," is a final decision), <u>Taha v. Blinken</u>, 765 F. Supp. 3d 91, 95 (D. Mass. 2025) ("Most other sessions of this Court have found that a visa application subject to administrative processing and reconsideration is a final decision and therefore cannot form the basis of a viable unreasonable delay claim under the APA."), and <u>Yaghoubnezhad</u>, 734 F. Supp. 3d at 101–02 (rejecting plaintiff's argument that refusal by way of placing a visa application in administrative processing does not constitute final adjudication because "nothing in § 41.121 provides a 'specific, unequivocal command' for State to issue a final, unreviewable decision" (citation modified)), <u>with</u> <u>Ghannad-Rezaie</u>, 757 F. Supp. 3d at 154 (administrative processing is not a final decision), and <u>Carter v. U.S. Dep't of Homeland Sec.</u>, No. 21-cv-00422, 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021) (refusal followed by administrative processing is not a final decision).

Here, although Defendants nominally "refused" Luo's H-4 application, [Compl. ¶ 21], they nonetheless repeatedly notified Luo that his application remained under processing, [<u>id.</u> ¶¶ 23–25], suggesting that his application is still undergoing adjudication and is, as such, not yet final. <u>Hassan v. Dillard</u>, 758 F. Supp. 3d 973, 981 (D. Minn. 2024) ("Simply describing the decision as final does not make it so."); <u>Khosravi v. Rubio</u>, No. 24-cv-01227, 2025 WL 821885, at *5 (W.D. Wash. Mar. 14, 2025) ("[R]ather than simply accepting the label of 'Refused,' courts should consider 'what is actually happening' in a specific case to determine whether an agency has discharged its duty." (quoting <u>Momeni v. Blinken</u>, No. 24-cv-04879, 2024 WL 5112234, at *4 (C.D. Cal. Dec. 13, 2024))). The Court therefore follows its sister courts that have determined that refusal for administrative processing does not fulfill a consular officer's

duty to "issue" or "refuse" a visa application and assumes, for the narrow purposes of this order, that Defendants have yet to discharge their duty to act.

The second prong requires a finding that the agency's delay is unreasonable. To evaluate whether agency action is unreasonably delayed, courts in the First Circuit apply the six factor rubric laid out in Telecomms. Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) (hereinafter "TRAC"). The TRAC factors are as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

Id. (cleaned up).

As a threshold matter, the Court observes that whether the TRAC factors are appropriately assessed at the pleading stage is an unresolved question in the First Circuit. Rezaii v. Kennedy, No. 24-cv-10838, 2025 WL 750215, at *4–5 (D. Mass. Feb. 24, 2025) (collecting cases). That said, "most sessions [within this Court], evaluate the TRAC factors at the motion to dismiss stage." Id. at 4. Here, to the extent that Plaintiffs argue that the fact-intensive inquiry into the reasonableness of a delay is premature at this juncture, [ECF No. 11 at 9–10], the Court notes that they must nonetheless plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see also Durrani, 2024 WL 4228927, at *3 (acknowledging that the TRAC factors are fact-intensive, but determining that the court must "evaluate the facts pleaded in the complaint and determine

whether they plausibly state a claim for relief under the applicable law"); <u>Da Costa v. Immigr.</u>
<u>Inv. Program Off.</u>, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), <u>aff'd</u>, 80 F.4th 330 (D.C. Cir. 2023)
("There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-
dismiss stage, so the question of whether discovery is necessary depends, as with any sort of
claim, on the particular Complaint.").

      The first two <u>TRAC</u> factors are usually considered together.  <u>Dastagir v. Blinken</u>, 557 F.
Supp. 3d 160, 165 (D.D.C. 2021).  The first factor asks "whether the agency's response
time . . . is governed by an identifiable rationale," <u>Ctr. for Sci. in the Pub. Int. v. U.S. Food &</u>
<u>Drug Admin.</u>, 74 F. Supp. 3d 295, 300 (D.D.C. 2014), and the second looks at whether
"Congress has provided a timetable" that "may supply content for th[e] rule of reason," <u>TRAC</u>,
750 F.2d at 80.  The Plaintiffs offer no case law or statutory language supporting their contention
that the approximately fourteen-month delay at issue here—that is, the period of time that Luo's
visa application has been in administrative processing —is "unreasonable by any fair standard."
[ECF No. 11 at 8].  Accordingly, Plaintiffs fail under the first two <u>TRAC</u> factors.

      The third and fifth factors are also ordinarily assessed together and relate to the "interests
prejudiced by the delay," including the "impact on human health and welfare and economic
harm."  <u>Liberty Fund, Inc. v. Chao</u>, 394 F. Supp. 2d 105, 118 (D.D.C. 2005).  Plaintiffs claim
that the delay in processing has resulted in "significant hardships," including "financial loss,"
[Compl. ¶¶ 26, 28], and emotional hardship given the continued separation of the family, [ECF
No. 11 at 8–9.  Although the Court sympathizes with Plaintiffs' challenging circumstances, "the
hardships that [Plaintiffs] allege[] do not materially distinguish [their] circumstances from those
of the countless other[s]."  <u>Ghannad-Rezaie v. Laitinen</u>, 757 F. Supp. 3d 148, 155–56 (D. Mass.
2024); <u>see also</u> <u>Memon v. Blinken</u>, No. 22-cv-0754, 2023 WL 1438396, at *3 (D.D.C. Feb. 1,

2023) ("In general, concerns about separation from family. . . are insufficient to weigh in favor of the plaintiff.").  These factors, therefore, do not support a finding of unreasonable delay.

The fourth <u>TRAC</u> factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority."  750 F.2d at 80.  Courts have generally "declined to move plaintiffs to 'the head of the queue' because doing so would 'simply move[] all others back one space and produce[] no net gain.'"  <u>Durrani</u>, 2024 WL 4228927, at *5 (citation modified) (quoting <u>Mashpee Wampanoag Tribal Council, Inc. v. Norton</u>, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).  Moving Luo to the "'front of the line' would come at the expense of others who shoulder equally taxing burdens."  <u>Akter v. Rubio</u>, No. 24-cv-03256, 2025 WL 1950884, at *6 (D.D.C. July 16, 2025) (quoting <u>Dastagir</u>, 557 F. Supp. 3d at 168).  This factor, accordingly, weighs against a finding of unreasonable delay.

Finally, because Plaintiffs allege no facts suggesting bad faith or impropriety on the part of the Defendants, the sixth <u>TRAC</u> factor weighs neutrally in the Court's analysis.  <u>Palakuru v. Renaud</u>, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).  In sum, the <u>TRAC</u> factors do not support a finding of unreasonable delay, and the Court concludes that Plaintiffs have failed to state a claim under the APA, and, accordingly, the MVA.  <u>Durrani</u>, 2024 WL 4228927, at *2-3; <u>Aghamohammadi v. Rubio</u>, No. 24-cv-02801, 2025 WL 2687343, at *15 (D. Md. Sep. 19, 2025) ("Because the standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act, Plaintiffs have failed to state a claim for mandamus.") (citation modified).

### D.  INA 8 U.S.C.A. § 1101(a)(15)(H)

Plaintiffs further allege a violation of 8 U.S.C.A. § 1101(a)(15)(H) (Count III).  [Compl. ¶¶ 38–41].  That provision, however, is "merely a definitional section [of the INA] which cannot

be construed to create a private right of action." Dowling v. United States, 476 F. Supp. 1018, 1020 (D. Mass. 1979). Count III, therefore, is dismissed.

### E.  Due Process and Equal Protection Claims under the Fifth Amendment

Plaintiffs claim that the purported delay in the adjudication of Luo's visa application violates their substantive and procedural due process rights under the Fifth Amendment. [Compl. ¶ 45]. Not only do Plaintiffs abandon these claims in their opposition, see [ECF No. 11], but, in any case, they have failed to allege deprivation of a constitutionally protected interest. Blinken, 765 F. Supp. 3d at 96. Neither have Plaintiffs alleged facts to sufficiently plead discrimination "that is so unjustifiable as to be violative of due process." Sessions v. Morales-Santana, 582 U.S. 47, 52 n.1 (2017) (quoting Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975)). These claims are, accordingly, dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, [ECF No. 9], is **GRANTED** without prejudice.

SO ORDERED.

October 21, 2025                                  /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE